Mr. Justice Cox
delivered the opinion of the Court:
It appears that one August Vallbrecht, of the city of Washington, died in the year 1879, leaving a daughter named Annie Russ, wife of Benton Russ, and a grandson, who is the complainant, Charles Edwin Hunt, son of a deceased daughter, Louise Hunt. By his last will and testament he devised and bequeathed “ unto my daughter, Annie Russ, all the money from the German Benevolent Society, for her own use and benefit forever.”
Then, next, he devised “ to my daughter, Annie Russ, and my grandchild, Edwin Hunt, the son of my deceased daughter, Louise Hunt, their heirs and assigns forever, the residue of all my real and personal estate, of whatever kind, to be equally divided, share and share alike; conditional, *528 however, that if my said grandson shall die without issue, his share to go to my said daughter, Annie Russ. And lastly, I do hereby constitute and appoint Benton Russ, to be executor of this, my last will and testament, with full power to sell and convey, and give proper deeds,” &c.
It may be said, in passing, that although the will gives the grandson a fee, conditional upon his leaving issue, we consider that to be equivalent to a devise of an undivided interest absolute and in fee simple.
The executor, who is the son-in-law of the deceased, qualified and took possession of the personal property, but it was found to be very trifling, not exceeding the sum of $34.50. The expenses of the funeral and administration amounted to $122.19. Under the power given in the will to the executor to sell and convey and give proper deeds, he assumed that he had control over the real estate, and hé collected a large amount of rents. He also made sale of one of the lots belonging to the deceased, which was subject to a deed of trust to the creditor; that is, sold the equity of redemption for $380, and sold the other lot for $1,000, receiving a cash payment of $500 and a deferred note for $500, the balance of the purchase money.
In September, 1885, the defendant, Benton Russ, filed a petition in the Orphans’ Court, setting forth that the infant, Charles Edwin Hunt, was then entitled to the sum of $500, which is one-half of the proceeds of said sale, and that he held a promissory note, secured by a deed of trust for the same, and asked that a guardian might be appointed for the child. It is alleged in the argument that he expected to be the guardian himself, because he had married the boy’s aunt on his father’s side, and gave notice that unless he was appointed guardian, he and his wife would insist upon their legal rights against the estate. However that may be, the boy’s aunt was appointed guardian and has filed this bill in the name of the child, asking an accounting as to the personal estate, and the proceeds of the real *529 estate, against Benton Ross. Another subject of controversy, also, is certain money payable by certain German benevolent societies. The will gives the money to be derived from the German Benevolent Society for the use and benefit of Annie Russ, the married daughter. It turns out that there were two societies, one called the German Benevolent Society, the articles or constitution of which provided that each member should have the right to declare in his will how the money should go. There was no such provision in the constitution or articles of the other society, -which was called the German Benevolent Society of the Evangelical United Church Congregation; but they paid the whole of the amount to the child, instead of giving any part of it to the grandchild, construing the German word in the constitution to limit the benefit to the child, the immediate descendant, and not to extend it to the grandchild. It makes very little difference, howevei’.
We think it clear that this money did not belong to the estate, and therefore no relief can be given in this case against Mrs. Russ. If there is any claim against her it should be asserted at law in an action for money had and received, for one-half of the money collected by her.
The next important question in the case refers to the claims of Benton Russ, individually, against the estate of his father-in-law, and which he sets up in this action, by way of bar, or set off, against the claims of the grandchild against the fund. The answer makes two claims, one on a note of $120, with interest, and the other for $660, the amount for board and lodging, washing, &c., furnished to the deceased during his life-time.
In the course of the argument, it was suggested that the sale by the executor, under the power assumed by him to be contained in the will, of this real estate, converted the same into personalty, and therefore, it should be decreed that the money should go into the account of the executor as such.
*530 This subject was discussed in the case of In re Thompson, 6 Mackey, 536; it was there shown that the doctrine of equitable conversion is purely a doctrine of a court of equity, in which it is held that when land is directed to be sold, it is converted into money for certain purposes ; but it was never so treated for the purpose of being taken control of by an Orphan’s Court or Court of Probate. That kind of court is not given any jurisdiction over the fund at all, and no action by it can affect the fund. The executor holds the monej'j not as an executor, but in trust, and any claim which is brought against it must be made out by the same kind of proof which would háve to be adduced if the suit was brought directly for the purpose of affecting the land itself in the hands of the heir, and the money — the proceeds of the land — is as much the property of the devisees or the heirs at law as if the land had not been converted into money at all. This executor is in the attitude of a creditor prosecuting a suit against the heir at law on account of the deficiency of personal estate. He is to be dealt with here as' if he had been a plaintiff filing his bill, instead of the executor, claiming a set-off for these claims.
The question is as to the kind of proof necessary to be produced to establish claims against the heir at law in such cases. A claim against the personal estate is to be verified under the Act of 1798; that is, by the affidavit of the party as to the justice of the claim, and then it is to be passed by the Orphan’s Court by an order, but that order does not release the executor from the duty of defending against the claim, if he knows of any defense. If there is no objection to the claim known by the executor, he can safely pay it, and it will be allowed as a credit in his account of the personal estate. But an order passing a claim, in that form, is not even prima Jade evidence of the validity of the claim as against the heir or devisee of the realty, and if the executor chooses to pay the claim and seeks, in case of overpayment, to be re-imbursed out of the real estate, he cannot *531 rely upon the order of the court passing the claim, but he must produce original evidence in support of the claim against the heir as a creditor would have to do. That was decided by the Court of Appeals of Maryland, and always has been recognized as the law here. In Gist vs. Cockey, 7 H. & J., 136, it was held that even a judgment obtained against an executor is no evidence against the heir at law, but the whole case must be proved anew. That has also been decided in this court. We decided it last, I think, in a case in 3 Mackey. In that case we cited the case of Ingle vs. Jones, 9 Wall., Supreme Ct. Rep., 495. The case in 3 Mackey, 236, Keefe vs. Malone, is a very.strong case. There the executor was, at the same time, a devisee of the real estate, and we held that a judgment against him, binding the personal assets in his hands, was not even prima facie evidence against the same man in the character of devisee of the realty.
Now, in the light of the law, what did the auditor do in this case ? He says, “ This note is for the sum of $120, payable to the said Benton Russ, on demand, with interest. It has and had when presented here, the usual affidavit of the creditor and the approval of the justice holding the special term of this court for Orphans’ Court business, in the formula in which such approval is usually given.
“The next appropriation is made to an account presented by Benton Russ, marked Voucher 11 J, being a claim of the testator for board, with room and washing, from August, 1875, to April, 1879, and amounting, to $660. To this claim there is, and was when presented here, attached the usual affidavit of the creditor and the approval of the justice holding the special term of this court for Orphans’ Court business, in the usual form.
“ Vigorous objection was made by the solicitor for the complainant to the allowance of these two claims last mentioned, mainly upon the ground that they are not accompanied by such approval as is required by law to authorize their allowance or payment.”
*532 Now, we hold that an executor proceeding against the heir at law must prove his case by the best evidence. Nobody ever heard that the production by him of an ex-parie affidavit made at another time was sufficient proof; that was not the best evidence. The auditor was clearly wrong. The note should have been proved by the usual proof introduced where such instruments are sought to be established, viz., proof of handwriting, etc.
Then, as to the other claim, the auditor says: “ It is true that there is not in this proceeding any original proof competent and sufficient to warrant its allowance.” We have examined the proof produced as to this item and find the same wholly unsatisfactory. It did not establish any sufficient contract on the part of the deceased; there is nothing but the statement of the creditor against the deceased, while the latter’s mouth is closed, and he undertakes, in a very general way, to furnish this proof by his wife. The auditor further says, “ But all objections urged here are disposed of 'in my opinion by the law existing in this District as found in the act of assembly of Maryland of 1798.” He then refers to certain sections of the act as to the form of proof on wdiich the executor is to pay claims against the deceased. He refers also to authorities, according to which an executor’s claim is put upon the same footing as the claim of any other creditor. But he'overlooks the fact that the authorities cited refer entirely to the administration of personal estate, and they simply hold that an executor who has paid a claim upon the ordinary voucher, upon an 'order of the Orphan’s Court, will be fully protected in so doing and be entitled to credit on that account. That relates, as I said, exclusively to personal estate; but if he makes a claim against, the deceased and has to resort to the real estate in order to satisfy it, he must establish his claim against the heir or devisee by the best evidence. The authorities cited have no application to a case like the present, where the whole assets of the testator are the proceeds of real estate *533 and the defendant Russ is a trustee, Holding them for the benefit of these two parties, one his wife and the other a minor child. It is apparent, therefore, that the auditor erred in allowing this claim, and the case will have to go to the auditor again, to restate the account, when the alleged claims may be better proven. In the judge’s decree at special term it is stated that, “ the complainant having withdrawn his motion for leave to amend his bill and the complainant having relied in support of his exceptions to the several claims of the defendants allowed by the auditor upon lapse of time and upon the Statute of Limitations, it is ordered, adjudged, and decreed that the objection of laches and limitations be overruled.”
Now, there is nothing in the record to show that the defense of limitations was ever made at all; there is nothing in the bill and there is nothing in the auditor’s report about it. It appears to have been made, if at all, in the course of the argument. We have not before us anything to show whether the defense should be sustained, the only mention of it being in the decree of the court below. The decree below overruling the exceptions to the items of $660 and $120 is reversed. We sustain some of the exceptions to the auditor’s report on both sides. We sustain the complainant’s 3d, 4th, 5th, 7th, and the 14th exceptions, “The exception to the application-of the proceeds of sale of the lot to Cavanaugh to pay the personal claims of Benton Russ,” we do not now dispose of, that being a legal question which the court does not intend now to decide. As to the 15th exception which is as to the costs, we will postpone a decision until a final hearing of the case before us.
As to the exceptions of the defendant, we sustain the 4th and overrule all the others except the 2d, which we reserve for further consideration.
The decree of the court below will be reversed and the cause referred for a restátement of the account.